**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| RODNEY WILLIAM WOLFE | * | |
| Plaintiff, | * | Case No. 08-03479-PJM |
| v. | * | |
| THOMAS ROUTZAHN, *et al.* | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff Rodney William Wolfe, by and through the undersigned counsel, hereby opposes the Defendants' motion for summary judgment ("MSJ") stating as follows:

## INTRODUCTION

On January 24, 2008 Rodney Wolfe surrendered to law enforcement officers without any violence. Upon being located and placed in the laser sight of a taser gun, Rodney Wolfe was ordered to show his hands so he could be handcuffed. He complied. He was handcuffed in a room with five law enforcement agents in it. *After he was handcuffed* he was thrown to the ground, and hit with at least one blow the head with a flashlight, and suffered numerous lacerations and contusions to the head. These are undisputed material facts supported by evidence as cited below. Mr. Wolfe also has stated under oath that he was kicked in the genitals after he was removed from the room. While the severity of the beating is a factual issue for which a trial is necessary, the undisputed facts reveal that the officers used excessive force on Mr. Wolfe after he was restrained. No set of undisputed facts, taken in the light most favorable to Mr. Wolfe, presents a scenario in which a reasonable fact finder would be prohibited as a

matter of law from finding in favor of Mr. Wolfe.  As such, the Defendants' motion for summary judgment should be denied.

## LEGAL STANDARD

A motion for summary judgment should only be granted only if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  If there clearly exist factual issues that could be resolved in favor of either party, and therefore must be resolved by a finder of fact, then summary judgment is inappropriate.  *Anderson* at 250.  The moving party bears the burden of showing that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334 (4th Cir. 1992) cert. denied 507 U.S. 972 (1993).  The court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold*, 369 U.S. 654 (1962), *Gill v. Rollins Protective Servs. Co.* 773 F.2d 592 (4th Cir. 1985).  It is inappropriate for a court to grant summary judgment for an excessive force claim when there are disputes regarding the degree, or existence, of the alleged use of excessive force.  *Young v. Prince George's County,* 355 F.3d 751 (4th Cir. 2004).

## UNDISPUTED FACTS

The moving party has the burden of showing that there is no reasonable interpretation of the undisputed facts before the court under which the non-moving party can prevail.  Here, the Defendants have filed as exhibits the depositions taken in the case, along with the reports of the Defendants' experts (but not the Plaintiff's) and provided the court with a greater than two thousand page do-it-yourself kit for determining which facts are, and which facts are not,

disputed.   Plaintiff will refer to the Defendants exhibits with a **Dx**. designation, and the Plaintiff's exhibits with a **Px**. designation.[1]

While many of the material facts are disputed, including what was said immediately prior to the beating, what Mr. Wolfe did once he was on the ground, whether or not Mr. Wolfe was kicked in the genitals, and whether Mr. Wolfe was punched and kicked in addition to being hit in the head with a flashlight, several material facts which are sufficient for the claims to survive summary judgment are not disputed:

1.     Mr. Wolfe was arrested on January 24, 2008 at 122 W. Potomac St., Williamsport MD.  **Dx. B**, Deputies Deposition Exhibits 10 and 11.

2.     Prior to his arrest Mr. Wolfe hid from the arresting officers in an upstairs bedroom.  **Dx. D**, 41:2-42:6.

3.     When the arresting officers found Mr. Wolfe in the upstairs bedroom, they ordered him to show his hands and he complied.  **Dx. C**, 19:5-13.

4.     Mr. Wolfe complied with verbal commands and was handcuffed before any physical altercation took place.  **Dx. B**, Deputies Exhibits 10 and 11. **Dx. B**, 177:17-20.

5.     There were no fewer than five law enforcement officers in the room when Mr. Wolfe was handcuffed and subsequently beaten.  **Dx. B**, 78:12.

6.     After Mr. Wolfe was handcuffed he was thrown the ground.  **Dx. C**, 26:18-20

7.     After Mr. Wolfe was handcuffed and thrown to the ground he was struck in the head with a flashlight.  **Dx. D**., 58: 15-20.  **Dx. C,** Deputies deposition exhibit 11, pg. 4 of 7.

---

[1]   The Defendants refer to Mr. Wolfe's incarceration and statements at his plea hearing in their statement of facts. However, they do not argue that facts have any preclusive effect and should be prohibited from so arguing on reply. *Marie O. v. Edgar*, 131 F.3d 610, 614 fn. 7 (7th Cir. 1997).  The plea transcript includes Mr. Wolfe's statements that he did not intentionally touch any officers (**Dx. F,** 35: 9-10) and that his public defender discussed with him "second degree assault and the fact that there is no intent requirement" **Dx. F.**, 30: 7-8.  Further, such use of the conviction would be the assertion of collateral estoppel – an affirmative defense not raised in their responsive pleadings.  As well, a guilty plea is not dispositive of the issues in this case.  See e.g.,  *Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 1993).

8.     Mr. Wolfe was bloodied and bruised after his handcuffed encounter with the Deputy Defendants.  *Compare* **Px. 1, Px. 2,** and **Px. 3** to **Px. 4.** (Photos authenticated at **Dx. C**, 67:12-72:9).

9.     A blow to the head with a flashlight is a violation of Washington County General Orders, unless survival is an issue.  **Px. 5**, General Order 21012.00 and **Px. 6**, Document 25-5 at page 7.

10.    A blow the head could cause death or serious bodily injury.  **Dx. E.**, 77:14-16.  **Dx. D.**, 18:2-7.

10.    Mr. Wolfe's head was bloodied and bruised by the Defendants after he was handcuffed.  **Px. 1**, **Dx. E**, 67:15-21.

11.    Mr. Wolfe was sent to the hospital for treatment of his injuries. **Dx. D**, 67:16-68:14.

The extent of, motivation for, and damages caused by the beating are disputed issues which must be determined at trial.  The undisputed facts do not show that there is no scenario under which Mr. Wolfe could recover, and may indicate that the Court could rule on liability *sua sponte* in favor of the Plaintiff.

## <u>DISPUTED MATERIAL FACTS</u>

In addition to the undisputed facts indicating that the officers used excessive force, there are many disputed facts which would be relevant and material to a fact-finder's determination about whether, given the totality of the circumstances, the officers used excessive force.  Though not an exhaustive list, below are a number of disputed facts with cites supporting a finding that they occurred which, if decided in Mr. Wolfe's favor, could lead to a finding of liability for the Defendants.

1.     Whether Defendant Footen pulled on Mr. Wolfe's handcuffs.  **Dx. A**, 101:3-5.

2.     What Mr. Wolfe said before he was thrown to the ground.  **Dx. A**, 101:13-14.

4

3.　　　What Mr. Wolfe did after he was handcuffed and before he was thrown to the ground.  **Dx. A**, 118:19-123:8.

4.　　　Whether Defendant Routzahn placed his boot on Mr. Wolfe's throat immediately after he was thrown to the ground.  **Dx. A**, 123:9-13.

5.　　　Whether Defendant Routzahn kicked Mr. Wolfe right below the eye.  **Dx. A**, 122: 11-17.  **Px. 2, Px 3, Dx. E,** 67:15-21.

6.　　　Whether Mr. Wolfe pulled his hands towards his own face to protect himself from kicks to the head.  **Dx. A**, 138:2-12.

7.　　　Whether Mr. Wolfe choked Defendant Footen.  **Dx. A.**, 139: 2-3 (Wolfe saying he did not) and *compare* **Dx. B.**, Deputies Exhibit 9, *also attached as* **Px. 7** (interview within a week of the incident) (Footen stating, "Rodney Wolfe did reach up towards my throat with his hands, either towards my face or throat region with his handcuffed hands and he almost got his hands onto my face or my throat in that area.  I pushed his hands away…" and "I was able to push his hands away before he was actually able to make a grasp or clutch onto anything" at pg. 3 and pg. 4, January 31, 2008) to **Px. 6**, ("Rodney Wolfe assaulted at least four police officers and even grabbed one of them by the throat, which can be deadly", May 13, 2008), to **Dx. C** 32:17-20 (Footen stating, "Rodney Wolfe reached up to me, to my throat region, opened his hands up in just a cupping shape on both hands and started to apply force right to my throat." June 23, 2009).

8.　　　Whether any of Mr. Wolfe's actions could reasonably be interpreted as choking Defendant Footen.

9.　　　Whether the only contact to Mr. Wolfe's head was a single flashlight blow that caused multiple lacerations and contusions to his head, eye and jaw, or he was, contrary to the Defendants' testimony, hit more than once in the head.  *Compare* **Px. 1, Px. 2. Px. 3.,** to **Dx B, 188:20-190:3.  Dx. E.** 13:14-18:13 and 67:15-21.

10.　　　Whether Mr. Wolfe was kicked in the genitals after he was handcuffed and shackled.  **Dx. A,** 195:10-12.

11.　　　The extent, nature and cause of Mr. Wolfe's beating.  *See* conflicting accounts of events, generally.

12.　　　Whether the Defendants acted with malice when they beat Mr. Wolfe.

13.　　　The extent of the injuries suffered by Mr. Wolfe.  *Compare* **Px. 1, Px. 2,** and **Px. 3** to **Px. 4.**  *See also*, **Dx. E.** 13:14-18:13 and 67:15-21.

14.    Whether Washington County failed to train the Defendants with respect to the use of deadly force.  *See* inconsistent statements about force in Section 3.

15.    Whether Washington County failed to train the Defendants with respect to the proper use of restraints.

16.    Whether Washington County failed require grief counseling.

17.    Whether Washington County's failures amount to deliberate indifference.

## ARGUMENT

### A.    The Force Used By the Defendants Was Not Objectively Reasonable

The force used by the officers was excessive and not objectively reasonable.  Based upon the depositions, interrogatory answers, expert reports, and admissions on file (providing a preview of the testimony expected at trial) a reasonable fact-finder could find that the force used by the Defendants was excessive.  Without reference to any specific evidence, the Defendants argue that the force used by the Defendants was not excessive.    MSJ Section III.   The Defendants refer only to three cases (including *Graham v. Connor*, 490 U.S. 386 (1989) for the general standards for excessive force) to support their claim that their use of force was not excessive: none of those cases is sufficiently similar to the case at bar to show that the force use here was not excessive.  In their explication of relevant facts, the Defendants studiously attempt to downplay the most important fact in this case: Mr. Wolfe surrendered and was handcuffed before the Defendants beat him.

After Mr. Wolfe was handcuffed he was kicked, punched and hit in the head with a flashlight.  A blow to the head with a flashlight is deadly force.[2]  In short, a reasonable fact-

---

[2] *Hygh v. Jacobs,* 961 F.2d 359 362, 364-65 (2nd Cir. 1992) (expert testimony that blow to the face with baton or flashlight constituted "deadly physical force"; court holds that "the evidence that [the officer] did in fact use excessive force against [the plaintiff] was strong"); *Evans v. City of Neptune Beach*, 61 F. Supp. 2d 1245, 1252 (M.D. Fla. 1999), *aff'd*, 213 F.3d 647 (11th

finder could find that handcuffing Mr. Wolfe before beating him with force that could kill him is excessive force. *Bultema v. Benzie County*, 146 Fed. Appx. 28, 36 (6th Cir. 2005)("It is beyond doubt that the act of a police officer hitting a restrained suspect in the head is excessive force."). A reasonable fact-finder could find that this egregious violation of his civil rights that cannot go unpunished.

The three factors described in *Graham v. Connor* to evaluate the reasonable use of force are: 1) the severity of the crime at issue, 2) whether the suspect posed an immediate threat to anyone, 3) whether the suspect was actively resisting arrest or attempting to resist arrest by flight. *Graham* counsels careful attention to the facts and circumstances of each particular case. An analysis of the timeline of this case is an important aspect of the analysis of the facts and circumstances.

Defendants attempt to analyze the *Graham* factors as applied to this case in light of *Wilson v. Flynn*, 429 F.2d 465 (2005). MSJ Section III. In *Wilson* the officers were responding to a situation in which they had been informed that the suspect was "tearing up the house" and that there "was a gun in the house." *Wilson* at 466. In the present case, the officers were responding to a domestic disturbance, violation of final protective order, and potential assault. **Dx. B**, at Deputies Exhibit 10. Before arresting Mr. Wolfe they cleared the house of civilians and searched the house, with at least one officer having his gun drawn. Upon seeing that Mr. Wolfe was unarmed, Deputy Footen holstered his weapon and handcuffed Mr. Wolfe. Although domestic violence can be regarded as a severe crime, the importance of this factor may be

---

Cir. 2000) (reasoning that blow from baton to certain areas of the body is not generally likely to be lethal, but "a blow to the head or neck could very easily cause serious injury or death"); *Hodson v. Town of Greenville,* 52 F. Supp. 2d 117, 124 (D. Me. 1999), (reasoning that "gratuitous blow to the head with a blunt instrument would clearly constitute excessive force").

diminished when the suspect complies with orders to show his hands.[3]  Regardless of the severity

of the crime for which Mr. Wolfe was being arrested, once he was restrained this factor became

must less important for the officers' choice of use of force.

The second *Graham* factor is: whether the suspect posed an immediate threat to anyone.

After Mr. Wolfe had been handcuffed, he did not pose an immediate threat.  In *Wilson* the

allegedly excessive force was used on an individual who had been drinking, had access to a gun,

and avoided the law enforcement agent's initial attempt to handcuff him outside of the house and

made his way back inside where the gun allegedly was.  *Wilson* at 466-467.  The *Wilson* Court

twice notes that all physical force by the law enforcement agents ceased once the handcuffs were

placed on Wilson.  *Wilson* at 467 and 468.  The Court explicitly states that Wilson's admission

that the allegedly excessive force ceased when he was handcuffed "'supports the finding that the

force used by the officers was that force which was necessary to effect the arrest.'"  *Wilson* at

469.

The opposite occurred to Mr. Wolfe.  The officers did not start beating him until after he

was handcuffed.  **Dx. D**, 42:2-46:3.  Common sense dictates that a restrained suspect does not

pose an immediate threat to officers or others.  Fourth Circuit case law also so indicates.  *See,*

*e.g., Young v. Prince George's County*, 355 F.3d 751, 757-758 (4th Cir. 2004)(summary

judgment for Defendants was inappropriate where the suspect was handcuffed and then slammed

to the ground, even though he was in possession of a firearm), *Bailey v. Kennedy*, 349 F.3d 731

(4th Cir. 2003) (force excessive where officers continued to use force after [plaintiff's] hands

were bound behind his back, his feet were bound and he was lying face down on the floor), *Jones*

---

[3] *See e.g. Jacobsen v. City of Nashua, 2002 U.S. Dist. LEXIS 11443 (D. N.H.)*(finding that the severity of the crime *Graham* factor in a domestic violence case no longer weighed against the Plaintiff when he was compliant with officers).

*v. Buchanan*, 325 F.3d 520 (4th Cir. 2003) (summary judgment for Defendants inappropriate where the Plaintiff testified that he was handcuffed and presented no threat to officers who punched him and jumped on him causing a crushed nose, facial lacerations, and bruised ribs) and *Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993)(summary judgment for Defendant inappropriate where Defendant caused injury to plaintiff after the officer, who was twice the mass of the Plaintiff, pinned her to the ground with his body). Strangely, the Defendants and their experts attempt to argue that a handcuffed man is, by virtue of being handcuffed, a man in possession of a deadly weapon. **Dx. C**, 134:5-7. ("Those handcuffs act almost as brass knuckles if you apply enough force. You know, it's basically a weapon around his wrists.") **Dx. G**, Charles Key Affidavit, pg. 12, ("When [Wolfe] did begin resisting, he already had a deadly weapon at his disposal. The handcuffs are made of steel and when swung can cause life threatening or fatal injuries.") The logical import of these assertions by the Defendants and their expert is that the act of handcuffing a compliant suspect changes the threat analysis of such an individual from a non-threat to a deadly threat, permitting the use of deadly force. This Orwellian doublespeak defies logic and common sense, as well as the established case law in the Fourth Circuit. Because all parties agree that Mr. Wolfe was compliant after being found and prior to being handcuffed, and that he was not struck at all until after he was handcuffed, and because he was handcuffed in a room with five law enforcement agents, the Court should weigh the second *Graham* factor heavily in his favor.

The third *Graham* factor is whether or not the suspect was actively resisting arrest or attempting to evade arrest by flight. Again, the undisputed facts are that no force was used on Mr. Wolfe prior to his being handcuffed in a 10 foot by 10 foot second story room with five law

enforcement officers in the room -- he could not have evaded arrest by flight.  **Dx. B.**, 80:22 ("he had no way to escape.")

The evidence about what happened immediately before Mr. Wolfe was thrown to the ground and hit in the head with a flashlight is disputed: he says that the officers pulled on his handcuffs in a manner that caused him pain, to which he responded with an offensive remark about a recently deceased police officer, to which the officers responded by throwing him to the ground and beating him. **Dx. A**, 113: 5-7.  *See* longer summary of Wolfe's description events *infra* pg. 13-14.  What Wolfe describes is an aggressive action taken by the officers and then an attempt by him to cover his face and belly from the officers' kicks and punches.  The officers' tales are somewhat different, and not internally consistent.

The Defendants argue that the Fourth Amendment "does not require police officers to wait until a suspect obtains a secure chokehold, pulls a knife or shoots a weapon in order to confirm that a serious threat of harm exist."  MSJ pg. 11.  For this proposition the Defendants cite to *Elliot v. Leavitt*, 99 F.3d 640 (4th Cir. 1996).  The Appeals Court in *Elliott* found as undisputed that the handcuffed suspect was aiming a gun at the Defendant officers with his finger on the trigger.[4]  The Appeals Court stated, "it was obvious that Elliott had a gun pointed at the officers ready to fire."  *Elliot* at 643.  To the contrary, here an objective analysis of the force that the officers alleged was used against them shows that Wolfe did not constitute a threat of death or serious bodily injury.  Wolfe's use of force expert has opined, "It is my opinion that an objectively reasonable officer, given the same circumstances and facts in this case would not

---

[4]   Because Elliott was killed, it seems likely that there was no testimony from the Plaintiff about his actions in that case, thus permitting the Appeals Court to find that the officers' version of events was undisputed.  Here Wolfe, in sworn deposition, has contradicted the Deputies' version of events, and the Deputies' versions are internally inconsistent.

believe that anyone present was in imminent threat of serious bodily injury or death." **Px. 8,** Expert report of Doug Scott. At pg. 5.   He has also opined, "It is my opinion that an objectively reasonable officer, given the same circumstances and facts in this case  would not have used the force and techniques applied in this case and that the force was inconsistent with state and national standards." **Px. 8** at pg. 6.

Wolfe has stated that he was thrown to the grown and beaten, and did not reach for Deputy Footen's neck. **Dx. A**, 139: 2-3.  He states that he was trying to protect his head when he moved his hands towards his head, rather than struggling or resisting arrest. **Dx. A.**, 138:2-12. Whether Wolfe was trying to protect himself rather than resist is a factual issue that should be determined by a jury. *See Kopf v. Wing*, 942 F.2d 265 (4th Cir. 1991)(Indicating that a jury could find that it is objectively unreasonable to require a suspect to cease struggling while a dog bites him).

Given the totality of the circumstances, the use of force by the officer's was excessive because Wolfe was not a threat, especially not a threat of death or serious bodily injury. Sergeant Price has stated he was not in fear for his life, or for Footen's life. **Dx D.**, 53:2-5. Wolfe's use of force expert has opined, "It is my opinion that an objectively reasonable officer, given the same circumstances and facts in this case would not believe that anyone present was in imminent threat of serious bodily injury or death." **Px. 8** at pg. 5.  Explaining with more particularity the circumstances, Mr. Scott describes why Mr. Wolfe was not a threat which warranted deadly force after he was handcuffed:

> A threat is the capability to do harm and a hostile intent.  In assessing the threat that Mr. Wolfe posed, the facts that the Deputies could know were that Mr. Wolfe did not have any known weapons, he was outnumbered by five law enforcement officers in the room, he had demonstrated fear of TASER shock, he had

cooperated when threatened with a TASER, he was prone on his back on a mattress, and he had reduced physical capacity of his arms and hands due to having his hands handcuffed together. In sum, Mr. Wolfe posed a limited threat and could be relatively easily controlled using force that is not likely to cause significant injury.

The law enforcement officers present in this case, specifically Deputies Footen and Routzahn had multiple options available to them that would have allowed them to control Mr. Wolfe with limited risk of significant future harm to themselves or Mr. Wolfe.

**Px. 8,** Pg. 4.

The Fourth Circuit has recognized that that "the availability of other reasonable, or even more reasonable options, is not completely irrelevant to our inquiry" about excessive force. *Young* at 758, fn. 2. Additionally, the Washington County General Orders (**Px. 5** at General Order 21011.00 which counsels verbal, TASER/OC, hands on, and ASP before deadly force) describe permissible escalation of force. Here, even assuming the officers did not intentionally throw Mr. Wolfe to the ground to beat him in retaliation for offensive comments, they had may less violent options than the actions they took. Because Mr. Wolfe was handcuffed and unarmed, Fourth Circuit case law indicates the violence used by the officers was excessive. *Elliott* and *Young* seem to represent the opposite ends of Fourth Circuit cases in which the Plaintiff is handcuffed when force is used. In *Elliott*, force was permissible because the handcuffed suspect was pointing a gun at the officers. In *Young*, summary judgment for the Defendants was not permissible because a jury could find that Mr. Young was not a threat because despite having possession of a gun on his body, he was handcuffed and not a threat. Mr. Wolfe was handcuffed when he was beaten, and was not in possession of a gun or any other

weapon, thus falling beyond the existing end of the handcuffed suspect spectrum indicating an even safer situation for the officers.

The Fourth Circuit has recognized that law enforcement may take a "circle the tents" approach to investigating excessive force complaints, and that where this occurs a fair minded jury could find a custom or practice of excessive force.  *Kopf* at 269.  Here the circling, which should be sorted out by a fact-finder, is clear.  Deputy Routzahn has testified at deposition, "…I didn't target a red area.  It was just an inadvertent blow the head while I was trying to punch him to defend myself."  **Dx. B**, 61:2-4.  Routzahn later states that he was trying to protect Footen. **Dx. B**, 183:12-14.   Additionally, Routzahn stated to the Court in Mr. Wolfe's criminal case "[o]ur while Department is familiar with Mr. Wolfe, and we were very concerned for everybody's safety including the family."  **Dx. F**., 24:17-19.  In his deposition Deputy Routzahn identified Mark Price as the only other law enforcement officer with whom he had ever discussed Rodney Wolfe.  **Dx. B**, 137:15 – 140:5.  Sergeant Price stated that in 2005 Mr. Wolfe had been a trustee at the Sheriff's department, and that the Sheriff's department would not allow a known aggressive, violent person to be a trustee.  **Dx. D**, 35:15-22.  The third *Graham* factor in this case is heavily laden with factual disputes that need to be resolved by the fact finder – summary judgment is entirely inappropriate.

**B.**      **The Arresting Officers are Not Entitled to Qualified Immunity**

The Defendants used deadly force on a handcuffed suspect who had been compliant before the handcuffing.  The law prohibiting the use of deadly force on a non-dangerous fleeing felon is clearly established.  *Tennessee v. Garner*, 471 U.S 1 (1986).  The law is clearly established that individuals have a right to be free from excessive force during the course of a seizure.  *Turman v. Jordan*, 405 F.3d 202 (4th Cir. 2005).  In analyzing whether the officers are

13

entitled to qualified immunity the Court should determine 1) whether the facts alleged show the officers violated a constitutional right and 2) whether that right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194 (2001). Now, Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 810, 818 (2009).

Wolfe was handcuffed. Then, Deputy Footen pulled on the handcuffs causing pain to Mr. Wolfe. Referring to a local officer who had recently been killed in the line of duty, Mr. Wolfe stated, "Look, I am trying to get up…it's hurting may hands…this is why you motherfuckers are getting killed" **Dx. A**, 101:3-5 and 13-14. "I made the statement about the officers being killed, I was thrown to the mattress, and then I just started getting beat." **Dx. A.**, 113: 5-7. Wolfe stated that after he was thrown to the ground he remembers, "Officer Routzahn putting his boot right in the middle of my neck, and then I started moving my neck trying to breathe. Deputy – and immediately when I hit the ground Deputy Footen jumped on my midsection, which then I said, 'Look, I got broken ribs, man, you all don't have to do this.'" **Dx. A**, 122: 11-17. Routzahn then kicked Wolfe right below the eye. **Dx. A**, 134:6-11. If Footen got a mark on his neck, it was from Wolfe pulling his hands free to protect his head. **Dx. A**, 138:2-12. "I never, ever, ever reached for Footen's neck." **Dx. A**, 139: 2-3. Additionally Wolfe states that after he was shackled and taken downstairs, "Routzahn…kicked me four or five times in the nuts." **Dx. A**, 195:10-12. These are the facts as stated by Mr. Wolfe under oath at his deposition, and if true, the Defendants are not entitled to qualified immunity. The inconsistencies in the deputies' versions of events, and the officers failure to recall Wolfe's exact

words, support the theory that Mr. Wolfe's version of events most accurately reflects what happened.

The official Washington County version of events is that, "Rodney Wolfe assaulted at least four police officers, and even grabbed one of them by the throat, which can be deadly." **Px. 6,** pg. 1. Deputy Footen stated to Sam Billotti in an internal interview, "Rodney Wolfe did reach up towards my throat with his hands, either towards my face or throat region with his handcuffed hands and he *almost got his hands onto my face or my throat in that area.* I pushed his hands away…" **Px. 7,** (emphasis supplied). The official version differs from the initial interview of the officer with first-hand knowledge of the event. This alone should indicate that the officials were trying to make the event fit into an acceptable scenario.

In *Saucier*, the Plaintiff complained about a "gratuitously violent shove" and the "totality of the circumstances", where he acted in an unconstrained manner which appeared to pose a threat to the Vice President of the United States. *Saucier* at 208. Further, Saucier did not suffer any "hurt or injury." *Saucier* at 209. Here, there is no dispute that Mr. Wolfe was handcuffed in a room with five law enforcement officers before any beating took place. There is also no dispute that he was injured, bloodied, bruised and sent to the hospital. If Mr. Wolfe's version of events is true the officers should probably be criminally prosecuted. Even if the facts are as described in some the documentation created by the officers, a fact-finder could determine that the force was excessive, or that the inconsistencies reveal that the officers are hiding the real facts about what happened.

Regardless, qualified immunity was permitted in *Saucier* because the officers were not found to have violated a clearly established right. Here, officer Routzahn used deadly force on a handcuffed suspect. This violates a clearly established right. Further, a fact-finder could

reasonably determine that the totality of the circumstances, including throwing a handcuffed suspect to the ground and placing a boot on his throat, and multiple kicks to the genitals after the handcuffed suspect's legs were shackled, indicate multiple violations of the Wolfe's right to be free from excessive force.

**C.**   **The Pendent State Law Claims, and Claims Against the County, Should Not Be Dismissed**

The Defendants argue that the pendent state law claim and the claims against the county should be dismissed.  The arguments are 1) if the federal claim are dismissed, the others should be, 2) the Defendant Deputies are entitled to immunity pursuant to Md. Code, Courts and Judicial Proceedings, 5-522(b)(stating that claims against State personnel should be dismissed if malice or gross negligence are not shown), 3) claims against "the Sheriff Defendants" should be dismissed because it is a State actor, and 4) claims against Washington County should be dismissed because, they argue, no constitutional violation has taken place, no evidence that injuries were caused by Washington County custom or policy, and repondeat superior liability is not available.  These arguments are wrong for the following reasons.

**1)**    **If the federal claims are resolved on summary judgment in the Defendants' favor, then the State claims should be transferred to State Court, or at least dismissed without prejudice.**

The Deputy Defendants have not argued that the elements of the State claim cannot be met, but rather that this Court should not exercise its jurisdiction over them if the Federal claims are resolved in the Defendants' favor.  Defendants have not argued that Plaintiff cannot prove the elements of his state law claims, only that they are entitled to immunity or dismissal if federal claim are dismissed.  Since they are not entitled to immunity, Defendants must be prohibited from sandbagging by raising new issues on reply.  Issues raised for the first time in a reply brief

16

should not be considered. *Marie O. v. Edgar*, 131 F.3d 610, 614 fn. 7 (7th Cir. 1997). As such, Plaintiff requests that this Court not grant summary judgment on any of the State law claims. Further, if the Federal claims are decided on summary judgment in the Defendants' favor, that the State claims be transferred to State Court, or dismissed without prejudice.

    **2)**    **The Deputy Defendants are not entitled to State immunity: they are employees of Washington County and there is evidence that they acted with malice.**

The Deputy Defendants are County employees and cannot asset MCTA immunity. The Defendants cannot assert Local Government Tort Claims Act immunity. Wolfe does not assert claim against Washington County as a state entity, but rather as a municipal actor. Mr. Wolfe's mother immediately provided notice to the Sheriff's department that permitted interviews of officers Footen and Price to occur within one week of the incident. *See* **Px. 6**. Such notice substantially complied with any applicable requirements. Despite the Sheriff's dismissal ruling of the claim as unsubstantiated, in part because the complaint was filed by Mr. Wolfe's mother (as permitted by Md. Code, §3-104(c)(1)(ii) – the complaint by an immediate family member is permitted, not the dismissal based on the identity of the filer), the complaint permitted an immediate investigation which was closed within four months of the incident. Notice was provided. Further, the Local Government Tort Claims act referred to by Defendants has an exception for lack of notice. Upon showing of good cause and, and unless the Defendants can affirmatively show prejudice, claims may proceed even without notice. Md. Code Courts and Judicial Proceedings, §5-304(d).

The officers are not entitled to immunity if they acted with malice. *Thaker v. City of Hyattsville*, 135 Md. App. 268 (2000) and *Okwa v. Harper*, 360 Md. 161 (2000). Wolfe has alleged facts which could indicate that the Defendants acted with malice. He has stated that he

was hit only after he made a reference to a recently deceased Washington County law enforcement officer.

Even if the Defendant Deputies are State employees, they are not protected by the MCTA for acts committed with malice or gross negligence. *Okwa v. Harper*, 360 Md. 161 (2000). The existence of malice should typically not be disposed of at summary judgment, but should be left to the fact-finder. *Thaker v. City of Hyattsville*, 135 Md. App. 268 (2000). Here, Wolfe has alleged that he was not beaten until he referred to a recently deceased law enforcement officer. "I made the statement about the officers being killed, I was thrown to the mattress, and then I just started getting beat." **Dx. A**, 113: 5-7.

Christopher Shane Nicholson was a Smithsburg Police officer, who was dispatched by the Washington County Sheriff's Department (**Dx. B**, 248:12-249:2), who was killed in the line of duty close in time to Mr. Wolfe's beating at the hands of the Defendants.[5]  Deputy Footen attended the Western Maryland Police Academy with him, was friends with him, and spoke at his funeral. **Dx. C**, 103:13-104:6.  He did not receive grief counseling after Officer Nicholson's death. **Dx. C**. 104:7-9.  Deputy Routzahn participated in the manhunt for Officer Nicholson's killer and was at the site where the killer was apprehended.  **Dx B.**, 246:16-18.  Deputy Routzahn did not receive grief counseling after Officer Nicholson's death. **Dx. B.** 246:4-9.  Mr. Wolfe's comments after he was handcuffed, though disrespectful, did not give the Deputies the right to retaliate with violence.  A reasonable fact-finder could find that they did retaliate with malice, with intent to injure and punish.

---

[5]   The jury trial of the killer of a Hagerstown Correctional officer took place from January 7, 2008 through January 18, 2008 and the sentencing hearing took place on January 22-24 and 28, 2008 in Howard County #13K06046639 (moved from Washington County so the Defendant could receive a fair trial).

**3)      Claims against the Washington County Sheriff's Department were voluntarily dismissed by Plaintiff by motion in April (granted by the Court on May 4th, 2009); The Claims Against Washington County are against the County as a Municipality and Should not be Dismissed**

The claims against the Washington County Sheriff's Department were dismissed. Document 17.  With consent of Defendants' counsel, the complaint was amended to include Washington County as a Defendant.  Document 33.  Washington County has not filed an Answer to the Amended Complaint.  1983 claims can be brought against a municipal entity.  *See Monell v. Dept. of Social Services,* 436 U.S. 658 (1978) and *City of Canton v. Harris*, 489 U.S. 378 (1989).  Washington County can be liable as a municipal entity if certain conditions exist, including its funding of the Sheriff's department.  *Dotson v. Chester*, 937 F.2d 920 (4th Cir. 1991).  Here, Deputy Routzahn has admitted that despite the existence of some State and Federal grants, "the county commissioners are our primary employer."  **Dx. B**, 9:22-10:1.  *See also*, Washington County Budget, admitted by Defendants to be accurate.  **Px. 9** pg. 95 (partial document)**.**  Deputy Routzahn admits that the Washington County Commissioners send him his paycheck.  **Dx. B**, 10:4-6.  In response to a query whether the County Commissioners maintain the Sheriff's Department he states, "They are our boss.  Yes, sir.  They are our employer."  **Dx. B**, 10:7-13.  And, in response to "Would you say Washington County was responsible for the policies and procedures that you were following in the actions related to the incident?" Routzahn responds, "Yes, sir, they were." **Dx. B**, 11:20-12:2.  Additionally it appears that the County does have control over litigation related to the Sheriff's department.  **Px. 9** at pg. 80. Because of the extent of the county funding, and its control over the policies and procedures under which the officers were operating, it was acting as a municipal, rather than State, actor.

A municipality is liable if it causes a deprivation of constitutional rights through an official policy or custom. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Municipal policy or custom is made formally and through "informal ad hoc decisions of … officials authorized to make and implement municipal policy." *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). Here, a fact-finder could find that the County is a municipal actor, and that a violation of federal rights occurred because of its acts and omissions. As explained below, a fact finder could find that the municipality is responsible for any violations, though bifurcating this portion may be the most efficient manner in which to proceed.

**4)      The Claim Against Washington County Should Not Be Ruled on Summarily.**

Given the facts and covered, and the information withheld by the County, a fact-finder could find that a federal violation occurred, and occurred because of Washington County's acts or omissions.

To establish municipal liability, the Plaintiff must "(1) identify[] the specific 'policy' or 'custom;' (2) fairly attribute the policy and fault for its creation to the municipality; and (3) find[] the necessary 'affirmative link' between identified policy or custom and specific violation." *Spell* at 1390.

> A plaintiff may show the existence of a policy or custom in four main ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'"

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

20

Here a fact-finder could find that there is sufficient evidence that Washington County has turned a blind eye to excessive force incidents, has failed to train its officers in the use of deadly force and/or restraints, and has adopted a policy of clearing its officers from claim of excessive force using unsupported reasons.

<u>Excessive Force in Washington County- Potentially Widespread</u>

Dr. Sward, who was a treating physician in the Washington County Hospital emergency department, stated that patients were brought into the emergency room by police officers "frequently." **Dx. E**, 40:2-6.  Dr. Sward also testified, over objection, that it would not be unusual to have an individual brought in by a police officer handcuffed to the bed. **Dx. E,** 41:19-42:2.

Washington County has refused to provide information about other deputies having been found to have used excessive for in the past ten years.  **Px. 10**, Interrogatory Response 11. Washington County does not deny that it has reported such information to the Department of Justice, it just refuses to produce it to the Plaintiff in this case. **Px. 10**. Interrogatory Response 13.  It also refuses to provide any documents related to "use of force" testing, handcuffing competency, complaints of excessive force against Defendant Routzahn, complaints about excessive force against Defendant Footen, and documents regarding the Sheriff Department's policies and procedures for use of force investigations on the basis that the documents requested "are not generated by this Defendant." **Px. 11**. Document Request Responses 2-6.  Plaintiff requested documents within the scope of Fed. R. Civ. P. 34(a) which includes documents in the Defendant's possession, custody or control.  In Maryland, the word "control" in the phrase "possession, custody or control" is "not synonymous with possession, but refers to the 'right, authority, or ability to obtain upon demand.'"  *Pleasant v. Pleasant*, 97 Md. App. 711, 732

(1993).  Washington County has the ability to demand such documents.  Such data could provide sufficient information from which to prove a claim of municipal liability.  Washington County's interrogatory responses were filed within one week of the status report.  The parties have agreed that motions to compel responses to discovery filed within one week of the status report, without limiting the timeframe in which such motions shall be made.  Status Report, Document 30, pg. 1 A. and B.  As such, Plaintiff requests that this Court permit this case to proceed to trial.  But, if this Court considers granting summary judgment for Defendant Washington County on this issue, Plaintiff requests an opportunity to first file a motion to compel.

Further, Washington County does not object, but only claims no knowledge about whether the Defendants received any type of grief counseling, etc. after the death of officer Nicholson.  Further, it objects, to an interrogatory about "an observable uptick" in use of force in response to domestic calls after the death of officer Nicholson because it is not limited to the time before Mr. Wolfe's arrest.  **Px.  8**, Interrogatory 24.  Such an uptick, continuing after Mr. Wolfe's arrest, could indicate that the policies and procedures in place at the time of Mr. Wolfe's arrest were insufficient to prevent general retaliation for the loss of an officer.

The foregoing facts provide a basis to believe that there may be a policy of turning a blind eye to excessive force in Washington County.

<u>Failure to Train</u>

The County has refused to provide training materials, and the Deputy Defendants have shown that they do not understand the permissible limits on the use of force.  Deputy Routzahn ran into the house "geared up" and later claimed that what happened in the room with five law enforcement officers and a handcuffed suspect was a "street brawl" in which "[t]here is no rules."  **Dx. B**, 70:4.  He also claims that he is entitled to "skip completely to deadly force if we

22

can articulate the fact that our life was in jeopardy, another officer's life was in jeopardy, or a civilian was in jeopardy", (**Dx. B**, 27:20-28:1), and that in his written statements he engages in "creative writing"[6] for the Judge and jury. **Dx. B**, 219:17-20.   There are, in fact, rules with respect to the use of violence for officers to follow when arresting an individual, and a belief that there are none could indicate a failure to train amounting to deliberate indifference.

Even Deputy Routzahn's version of events, the actions that he took to restrained Mr. Wolfe carried a risk the Mr. Wolfe would get struck in the head with a flashlight.  **Dx. B**, 69:15-22.  Despite departmental policies prohibiting the use of flashlights as weapons (**Dx. 5**, General Order 21012.00), and a use of force continuum that escalates from 1) Physical Presence/Verbal Persuasion, 2) OC/Pepper Spray/Taser, 3) Physical Force, 4) ASP Baton, 5) Canine, 6) Deadly Force (**Dx. 5**, General Order 21011.00), Routzahn believes that his strike of Mr. Wolfe in the head with a flashlight was not deadly force.

The Washington County definition of deadly force is the "[t]ype of force which will cause or has a strong potential of causing death or serious (life threatening) injury."  **Px. 5**, Washington County General Order 21001.00.

Defendant Footen has stated his belief that a strike to the head with a Mag-Lite is deadly force only "If it's intended to be deadly force it's construed as that, but a strike to the head generally is considered a hands-on approach.  It's considered in the hand-to-hand combat part of the use of force."  **Dx. C**, 127:15-19.  The use of a flashlight to the head is explicitly prohibited by General Order 21012.01 (**Px. 5**), except in situations in which officer or civilian survival is in question.  The definition of deadly force lacks the intent requirement insisted upon by Deputy

---

[6]  Deputy Routzahn submitted an errata attempting to change "creative writing" to "descriptive writing", but such substantive changes amounting to lawyerly fixing of potentially problematic testimony should not be allowed.

Footen.  As such, a reasonable fact-finder could conclude that the Deputies actions resulted from a failure to train.

Routzahn has stated that suspects should be handcuffed behind the back.  "Q. Do the general orders dictate that a suspect who is suspected to be violent, a felon, or a flight risk, should be handcuffed behind the back?"  "A. Everyone should…"  **Dx. B**, 73:13-16. Washington County does not have any records of training for the use of restraints or the use of force taking place.  **Px. 11.** Request responses 2 and 3.  In this case Mr. Wolfe was handcuffed in the front, and then that was given as the reason he was beaten.  As such, a reasonable fact finder could determine that the failure to train resulted in Mr. Wolfe's injuries.

<u>Clearing Officers Without Reason or Proper Investigation</u>

Washington County cleared the Deputy Defendants of wrongdoing.  **Px. 6.**  Its reasons are shown not to be true.  The Deputies' use of force was found to be justified because of the allegation that Wolfe used deadly force, and because his mother filed the complaint.  As stated above, Footen has admitted that he was not being choked.  Additionally, an immediate family member is permitted to file a complaint.  Washington County did not interview the two State Troopers who were also in the room.  Additionally, Washington County claim no knowledge of having a personnel "early warning system" (**Px. 10**, Interrogatory 25) despite its expert Dr. Peters' deposition testimony in another case before this Court that an "early warning system as used throughout the country says you should have a database that if an officer pops up on a complaint of excessive force more than X times… we're going to pull all those complaint and we're going to look at them" and that the "International Association of Chiefs of Police has that standard" and that the "COLIA [sic] standards say that there should be a procedure in place to

detect these things." **Px. 12** at 95:21-96:18.[7]  All of these actions and omissions appear designed to clear the officers from any finding of wrongdoing and to fail to recognize any patterns of brutality.  It may have done this in many other instances.  If the officers are aware of these decision-making processes designed to shield them from claims of excessive force, they will be less constrained in their use of force, thus creating a situation in which the County's policies are affirmatively linked to officers' use of excessive force.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this court deny the Defendants' motion for summary judgment.

Respectfully submitted,

/s/ John Mallonee
Bar No. 16516
4833 Rugby Ave., Suite 100
Bethesda, MD 20814
(301) 979-9448
John@malloneelawfirm.com
*Counsel for Plaintiff*

Dated: November 5, 2009

---

[7]   Dr. Peters has also expressed opinions in other cases which appear to be at odds with Washington County's records with respect to handcuffing and use of force training.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

RODNEY WILLIAM WOLFE                    *

    Plaintiff,                                    *       Case No. 08-03479-PJM

v.                                                          *

THOMAS ROUTZAHN, *et al.*                *

    Defendants.                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## PLAINTIFF'S EXHIBIT INDEX

    Px. 1 – Three photographs of Plaintiff Wolfe in the hospital

    Px. 2 – Booking photograph of Plaintiff Wolfe

    Px. 3 – Four photographs of Plaintiff Wolfe's injuries

    Px. 4 – Photograph of Plaintiff Wolfe after injuries healed

    Px. 5 – Washington County Sheriff's Department General Orders

    Px. 6 – Washington County Sheriff's Office dismissal of complaint of excessive force

    Px. 7 – Washington County Sheriff's Office 1/31/2008 interview of Defendant Footen

    Px. 8 – Plaintiff Wolfe's "use of force" expert's report and rebuttal report

    Px. 9 – Partial Financial Statements of Washington County

    Px. 10 -- Washington County Responses to Interrogatories

    Px. 11 -- Washington County Responses to Document Requests

    Px. 12 -- Partial deposition testimony from Dr. Peters in Robinson v. Montgomery
        County, 07-CV-0150 - PJM

**Certificate of Service**

I hereby certify that I caused copies of the foregoing to be filed by ECF on the 5th day of November, 2009.


<u>/s/ John Mallonee</u>