FILED ___ ENTERED
___ LOGGED ___ RECEIVED
JUN 21 2013
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RODNEY WILLIAM WOLFE     \*
                                           \*
      Plaintiff,                      \*
                                           \*
v.                                               \*          Civ. No. 08-3479 PJM
                                              \*
THOMAS ROUTZAHN, et al.      \*
                                               \*
      Defendants.             \*

## MEMORANDUM OPINION

Rodney Wolfe sued two Washington County sheriffs, Thomas Routzahn and Joel Footen (collectively, "Defendants"), for using excessive force when they arrested him, in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.[1] After a six-day trial, a jury found that Routzahn applied excessive force, but that Footen did not. It awarded Wolfe no damages.

Pending before the Court are four motions:

- Routzahn's Motion for Judgment Notwithstanding the Verdict (Paper No. 130);
- Wolfe's Motion for Judgment Notwithstanding the Verdict (Paper No. 134);
- Defendants' Petition for Attorney's Fees (Paper No. 132); and
- Wolfe's Motion for Attorney's Fees and Costs (Paper No. 135).

The Court **GRANTS IN PART** and **DENIES IN PART** Wolfe's Motion for Judgment Notwithstanding the Verdict (Paper No. 134), **GRANTS** Wolfe's Motion for Attorney's Fees (Paper No. 135), awarding him $9,413.90 in costs and $100,000 in fees, and **DENIES** the two remaining motions (Paper Nos. 130, 134, and 132).

---

[1] Wolfe also sued Washington County, but dismissed it as a defendant at the conclusion of the trial.

1

I.

On January 24, 2008, law enforcement officers in Washington County responded to a 911 emergency call reporting a domestic disturbance in Williamsport, Washington County, Maryland. Apparently Wolfe, in violation of a state protective order, was threatening his estranged wife in her home. Officers Routzahn and Footen, among others, responded to the call, encountered Wolfe in his wife's home, and arrested him. Wolfe alleged that Routzahn and Footen, among other things, kicked him in the groin and struck him in the head with a flashlight during the arrest.

In his Second Amended Complaint, Wolfe asserted five claims: (1) a Fourth Amendment excessive force claim pursuant to 42 U.S.C. § 1983; (2) a claim against Washington County pursuant to 42 U.S.C. § 1983 for its failure to properly investigate excessive force claims and adequately train its officers in the use of excessive force; (3) assault and battery; (4) "intentional/negligent" infliction of emotional distress; and (5) a claim pursuant to Articles 24 and 26 of the Maryland Declaration of Rights. Ultimately, only the first § 1983 claim went to the jury.

Initially, this Court granted summary judgment in favor of Routzahn and Footen on all claims. Wolfe appealed, and the United States Court of Appeals for the Fourth Circuit affirmed with respect to all but the § 1983 claims, holding that "the version of events supported by Wolfe's testimony and his mother's affidavit presents a triable issue of material fact." *Wolfe v. Footen*, 418 F. App'x 256, 262 (4th Cir. 2011).

On remand, the case proceeded to trial, and the jury found as follows: (1) "Defendant Thomas Routzahn applied excessive force against Plaintiff Rodney Wolfe so as to violate Plaintiff's rights under the Fourth Amendment of the United States Constitution"; (2) Footen did

*not* apply "excessive force against Plaintiff Rodney Wolfe so as to violate Plaintiff's rights under the Fourth Amendment of the United States Constitution"; (3) it awarded zero dollars in medical expenses, non-economic damages, and nominal damages; (4) it found that neither Routzahn nor Footen "acted maliciously or in reckless or callous indifference to Plaintiff's constitutional rights"; and (5) it awarded zero dollars in punitive damages.

II.

Both Wolfe and Routzahn have submitted motions for judgment notwithstanding the verdict. A court may enter judgment notwithstanding the jury's verdict if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). *See* Fed. R. Civ. P. 50(b) (authorizing the movant to renew the motion for judgment after the jury verdict). The Court views the evidence in the light most favorable to the non-movant, *Gregg v. Ham*, 678 F.3d 333, 341 (4th Cir. 2012), and asks whether there is "substantial evidence in the record to support the jury's findings." *See Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citation omitted).

A.

*Routzahn's Motion for Judgment Notwithstanding the Verdict*

Routzahn insists that he used objectively reasonable force under the circumstances. Wolfe, Routzahn says, was belligerent and drunk at the time of his arrest; he was at the scene of the arrest in violation of a protective order; he tried to conceal himself from the officers; he actively struggled with the officers during his arrest.

Wolfe disagrees. He argues that, if the jury believed his testimony about the flashlight strikes and kicks to his groin, then it is "law of the case" that Routzahn's conduct was objectively unreasonable, and he cites the following passage from the Fourth Circuit's opinion:

3

> *Assuming, as we must, that Wolfe's testimony is accurate, the objective unreasonableness of the officers' behavior is readily apparent.* Any threat presented by the unarmed Wolfe had largely abated by the time he was handcuffed. Even if the officers initially imagined Wolfe's exclamation, accompanied by a "tug" on his handcuffs, to be potentially dangerous resistance, that did not warrant Officer Footen holding him down and elbowing him while Officer Routzahn choked him with his boot, kicked him twice, stomped on his face, and struck him multiple times with his service flashlight. . . . Given Wolfe's evident helplessness, his laughter, use of profanity, and "insinuation" that he might spit, also did not justify the amount of force used against him. The fact that Wolfe explicitly assured the officers that their blows were unnecessary in light of his preexisting injuries underscores the unreasonableness of their behavior.

*Wolfe v. Footen*, 418 F. App'x 256, 261-62 (4th Cir. 2011) (emphasis added). Wolfe also contends that the evidence before the jury was sufficient for them to conclude that Routzahn did not act in an objectively reasonable manner under the circumstances.

On this point, the Court agrees with Wolfe. Excessive force claims are analyzed pursuant to the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The test balances the nature and quality of the intrusion against the government's interest. *Id.* at 396. In engaging in this balancing, the Court pays "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Here, the Fourth Circuit's opinion makes clear that, assuming the evidence before the jury was the same as that alleged before the Fourth Circuit during the appeal, Routzahn's use of force was not objectively reasonable. Moreover, the evidence before the jury was sufficient for it to conclude that Routzahn exercised objectively unreasonable force under the circumstances. Even if Wolfe was drunk, belligerent, and initially tried to conceal himself from the officers, the testimony of Wolfe and his mother was that he was handcuffed and surrounded by police officers

4

when the challenged beating took place. Further, Wolfe admitted into evidence photographs of his head from the night of the arrest; the jury could have concluded that the injuries sustained were demonstrative of an excessive use of force. "Under these circumstances, such blows would not have been a reasonable means of reducing the risk posed to civilians." *Wolfe*, 418 F. App'x at 262.

Routzahn next argues that qualified immunity shields him from Wolfe's excessive force claim because his "perspective at the time of the incident and his resulting reactions were not so unreasonable as to have been clearly unlawful under the totality of the circumstances."

Wolfe responds that qualified immunity is inapplicable because his testimony, which the jury believed, was that, while Routzahn kicked him in the genitals and struck him with a flashlight, Wolfe was handcuffed and shackled.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The qualified immunity analysis is a two-prong inquiry: first, the court asks whether a constitutional violation has occurred; and second, the court asks whether the right violated was clearly established. *Id.*

Again, the Court agrees with Wolfe. The Fourth Circuit's decision is law of the case on the issue of qualified immunity. *See Wolfe*, 418 F. App'x at 261 ("We . . . find that neither officer is entitled to qualified immunity."). Regardless, the evidence at trial suggests that Routzahn is not entitled to qualified immunity. There was evidence sufficient for the jury to conclude that Routzahn used excessive force without sufficient justification. Such "unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen" does not warrant the

5

protection of qualified immunity. *Bailey v. Kennedy*, 349 F.3d 731, 744–45 (4th Cir. 2003) (internal quotations and citation omitted).[2]

B.

*Wolfe's Motion for Judgment Notwithstanding the Verdict*

Wolfe contends that the Court should either enter judgment as to damages in the amount of Wolfe's medical bill after his arrest ($843.23), or enter judgment of nominal damages in the amount of $1.00.

Routzahn responds that the jury properly refused to award $843.23 because there was no evidence that Wolfe incurred the hospital bill, nor was there any evidence "that any part of the hospital treatment related to the alleged kicks to his groin." Routzahn concedes that, consistent with *Farrar v. Hobby*, 506 U.S. 103 (1992), nominal damages in the amount of $1.00 must be awarded whenever a plaintiff establishes a violation of his constitutional rights.

The Court agrees with Routzahn that the jury could have concluded, based on the evidence before it, that Wolfe was not entitled to medical expenses; accordingly, the Court declines Wolfe's request to enter judgment in the amount of $843.23. The Court will, however, enter judgment of nominal damages in the amount of $1.00. *See Farrar*, 506 U.S. at 113 ("*Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury.") (citing *Carey v. Piphus*, 435 U.S. 247 (1978)); *Norwood v. Bain*, 166 F.3d 243 (4th Cir. 1999) (holding that district court

---

[2] Routzahn makes one additional argument independent of the others: "Equally important, in light of jury's finding [sic] a complete absence of compensable damages, this Honorable Court should appropriately conclude that the degree of force actually applied did not stray beyond the bounds of conduct which appeared permissible and necessary in the moment." The Court declines to invalidate the verdict on account of a one-sentence argument devoid of any citation to any authority. More importantly, Routzahn's argument cuts against common sense and is wrong on the law: as a matter of logic, a jury could decline to award any damages for a variety of reasons, but still find that Routzahn's conduct constituted excessive force; as a matter of law, the Fourth Circuit has, in a slightly different context, rejected the proposition that an individual's constitutional "rights are transgressed only if he suffers physical injury." *Gray v. Spillman*, 925 F.2d 90, 93 (4th Cir. 1991) (discussing Fifth and Fourteenth Amendment rights).

erred in failing to award nominal damages after finding that plaintiff's constitutional rights were violated, and remanding to the district court to award $1.00) (en banc).

III.
*Motions for Attorneys' Fees*

Wolfe and the Defendants[3] have submitted requests for attorneys' fees. In a federal civil rights action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs," including fees for expert consultation and testimony. 42 U.S.C. § 1988(b) and (c). "Prevailing plaintiffs . . . ordinarily are entitled to attorneys' fees unless special circumstances militate against such an award." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 516-17 (4th Cir. 2012).[4] A plaintiff is a prevailing party for fee-shifting purposes if he or she is "able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Even a plaintiff who wins nominal damages is a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 113 (1992).

In calculating a fee award, federal district courts "determine a 'lodestar' figure by multiplying the number of reasonable hours expended times a reasonable rate." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986)). Courts consider the following factors when assessing the reasonability of an attorney's rate and hours:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the

---

[3] Apparently Routzahn, as well as Footen, seeks attorney's fees on the assumption that the Court should award him fees as a prevailing party. Since the Court has denied Routzahn's Motion for Judgment Notwithstanding the Verdict, his Motion for Attorney's Fees is **MOOT**.

[4] Although some of the cases cited involved fee awards under Title VII, the rationale applies equally to fee awards pursuant to 42 U.S.C. §§ 1983 and 1988. *See Hanrahan v. Hampton*, 446 U.S. 754, 758, n. 4 (1980) (noting that the § 1988 attorneys' fees provision "was patterned upon" Title VII's attorneys' fees provision).

customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Brodziak*, 145 F.3d at 196 (quoting *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990)). In the District of Maryland, a district judge's determination is also guided by Appendix B to the Court's Local Rules, which sets out non-binding guidelines regarding hourly rates. *See* LAR App. B. (D. Md.). *See also Poole v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000) (noting that Appendix B to the Local Rules "provide[s] a presumptively reasonable range of hourly rates in civil rights and discrimination cases").

Because "attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation," *Daly*, 790 F.2d at 1083, a fee award may also include reasonable litigation expenses. *See Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). This refers to "those out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (internal citations and quotation marks omitted). Further, district courts may factor into the fee award the time and energy a prevailing party expends in prosecuting a successful appeal or defending against a meritless one. *See Hutto v. Finney*, 437 U.S. 678, 699 (noting that additional fees may be accrued by plaintiffs in the event of a successful appeal).

With respect to both attorneys' fees and litigation expenses, the party seeking the award must provide adequate documentation of the requested amounts. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995)

("[T]he law is clear that no litigation costs should be awarded in the absence of adequate documentation.").

A.

*Footen and Washington County's Petition for Attorney's Fees*

Footen and Washington County argue that they are prevailing parties and that the Court should award them attorneys' fees. Specifically, Washington County argues that it is a prevailing party because Wolfe "voluntarily dismissed his claims against that entity at the conclusion of trial," while Footen cites the jury's finding that he did not use excessive force.

Neither argument warrants a fee award. A § 1988 fee award to a prevailing defendant is a rare occurrence, warranted only when the plaintiff's case was "frivolous, unreasonable, or without foundation." *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (internal citation omitted). The standard for awarding fees to defendants is higher than it is for plaintiffs because there are "quite different equitable considerations" present: awarding fees to defendants may discourage frivolous litigation, but doing it too often would undermine Congress' policy of encouraging meritorious civil rights litigation. *Id.*

Here, Wolfe's claims against Footen and Washington County, though ultimately unsuccessful, were not frivolous, unreasonable, or without foundation. Lack of success by the plaintiff is not the standard for awarding fees to a defendant; otherwise, every failed lawsuit would trigger an award of fees against the plaintiff, and that is not the law. *See Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning."); *Imgarten v.*

*Bellboy Corp.*, 383 F. Supp. 2d 825, 839-40 (D. Md. 2005) (same).  Footen and Washington County's Motion for Attorney's Fees is **DENIED**.

B.

*Wolfe's Motion for Attorney's Fees and Costs*

Wolfe requests $183,579.38 in fees and $9,413.90 in costs, for a total of $192,993.28. There is no dispute that Wolfe is a "prevailing party" for purposes of 42 U.S.C. § 1988: the jury found in his favor that Routzahn used excessive force against him in violation of the Fourth and Fourteenth Amendments.  What dispute there is pertains to the amount of the fee award.

Wolfe argues that the judgment recovered, the significance of the legal issue, and the public purpose served by the litigation merit an award.  *See Farrar*, 506 U.S. at 121–22 (O'Connor, J., concurring) (stating that these three factors should be considered when deciding whether to award fees in a case involving an award of nominal damages).  Wolfe's attorney attaches an itemized report of his time, representing that he spent approximately 720 hours on this litigation.  Wolfe also notes that the jury sent a note to the Court during its deliberations, asking whether it could consider attorney's fees in allocating damages, and that the Court advised them that they could not.

Defendants argue that "[t]he time and effort occasioned to obtain a $0 jury verdict should be matched . . . with a $0 award."  They argue that the case was a garden variety excessive force case against particular officers that was unrelated to any larger policy or practice of Washington County; they urge the Court to ignore the jury's note asking whether it may consider awarding attorney's fees in its damages award.  Defendants' argument appears to be that, as a matter of law, an award of damages for $0 does not merit a fee award.

10

The issue before the Court is whether an award of attorney's fees is warranted when the only relief obtained was a finding of liability against one of three defendants and nominal damages. On the one hand, the Supreme Court's observation in *Farrar* is intuitively appealing: "In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." *Id.* at 116.

On the other hand, the decision to award fees is ultimately within the district judge's discretion, *Hensley*, 461 U.S. at 437, and several courts have held that fee awards are merited even when the damages awarded were nominal. *See Guy v. City of San Diego*, 608 F.3d 582, 589 (9th Cir. 2010) (holding that fee award was warranted despite nominal damages award in an excessive force case because "a fee award serves a purpose beneficial to society by encouraging the City of San Diego to ensure that all of its police officers are well trained to avoid the use of excessive force, even when they confront a person whose conduct has generated the need for police assistance"); *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 125 (1st Cir. 2004) ("Here, although plaintiffs' victory was de minimis as to the extent of relief, the district court appropriately exercised its discretion to award fees, as the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose."); *Muhammad v. Lockhart*, 104 F.3d 1069, 1070 (8th Cir. 1997) ("Because we discern indicia of real success in Mr. Muhammad's victory, despite the fact that his judgment was for nominal damages only, we hold that the district court did not err in determining that he had achieved a material victory.").

The Court finds the reasoning of these cases persuasive and that Wolfe is entitled to an award of attorney's fees and costs. First, a fee award in this case reflects and furthers Congress'

policy of encouraging plaintiffs with meritorious claims to vindicate their civil rights. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). Particularly in an excessive force case, a finding of liability serves the purpose of encouraging Washington County "to ensure that all of its police officers are well trained to avoid the use of excessive force, even when they confront a person whose conduct has generated the need for police assistance." *Guy*, 608 F.3d at 589.

Second, the Court's decision to award fees is consistent with the long-standing principle that "reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages." *Rivera*, 477 U.S. at 576. This principle is, in part, a reflection of the reality that most civil rights cases are not worth large dollar-sum amounts and that attorney time is consistently more expensive than the typical civil rights plaintiff can afford.

Third, a fee award also should reflect the time and labor expended, the undesirability of the case, and the nature and length of the litigation. *Brodziak*, 145 F.3d at 196. Excessive force cases are hard to win. Alison L. Patton, *The Endless Cycle of Abuse: Why 42 U.S.C. § 1983 Is Ineffective in Deterring Police Brutality*, 44 HASTINGS L. J. 753 (1993) (summarizing reasons). Compounding the general difficulty of litigating excessive force cases are the unique circumstances of this litigation: it lasted four years; after losing at the summary judgment stage, Wolfe's counsel appealed to the Fourth Circuit, argued the case there, and successfully obtained a reversal of this Court's decision as to the § 1983 claim. *Wolfe*, 418 F. App'x at 262. Counsel then went to trial and obtained a favorable verdict. The amount of time and energy expended was substantial and the road was long; a fee award reflecting the effort is unquestionably warranted.

Finally, a jury award of nominal damages is not necessarily equivalent to a finding that there was no compensable injury. Instead, such an award may reflect many different considerations: the jury may have thought that a finding of liability was sufficient condemnation

of the offending officer in and of itself; it may have found Wolfe's own conduct especially unsavory; indeed, the negligibility of the award may simply have suggested the jury's dislike of the plaintiff. But to assert that the jury's award of nominal damages has any particular meaning is to claim mastery of reading tea leaves, more the province of fortune tellers than of tillers of legal soil. "Courts have always resisted inquiring into a jury's thought processes," *United States v. Powell*, 469 U.S. 57, 67 (1984), and this case does not warrant departure from that long-standing practice. Moreover, the Court cannot help but remind that the jury submitted a note during its deliberations, asking whether it could consider an award of attorney's fees in its damages calculations (which the Court answered in the negative). There is thus a suggestion that the jury might well have awarded possibly substantial damages in recognition of the efforts of Wolfe's counsel.

While the amount of the damages award is not necessarily irrelevant to determining the *size* of the attorney's fee award, the Court remains charged with considering the results obtained by plaintiff's counsel in calculating the size of the fee. *Brodziak*, 145 F.3d at 196. But Defendants' suggestion that a $0 damages award necessitates a $0 fee award *as a matter of law* is untenable.

As for costs, the Court finds that Wolfe is entitled to $9,413.90. As for fees, Wolfe's counsel submitted a detailed statement that he worked approximately 720 hours on the case and requests compensation at an hourly rate of $262.50, for a total request of $183,579.38. The Court has decided to award less than the fee requested to reflect the nominal quantum of damages, Wolfe's lack of success against two of the three Defendants, and more particularly to account for the amount of time counsel spent trying to develop what was ultimately an unsuccessful case against Washington County. But counsel's preparation as to Routzahn was

essentially the same as to Footen, and to a considerable extent as to Washington County, given that some of the case against Washington County was composed of information gleaned during litigation against Footen and Routzahn. Accordingly, the Court awards Wolfe an attorney's fee in the amount of $100,000, for a total of $109,413.90. This total amount shall be payable solely to the order of Wolfe's attorney and shall be paid by Defendants directly to him.

* * *

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Wolfe's Motion for Judgment Notwithstanding the Verdict (Paper No. 134), **GRANTS IN PART** and **DENIES IN PART** Wolfe's Motion for Attorney's Fees (Paper No. 135), awarding him $9,413.90 in costs and $100,000 in fees, and **DENIES** all other motions (Paper Nos. 130, 134, and 132).

A separate Final Order of Judgment will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

Date: June 20, 2013